**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**BASF CORPORATION,**

                                    **Plaintiff,**

  vs.                                                  **5:22-CV-00281
(MAD/ML)**

**RALPH STOUTENGER d/b/a CUSTOM
COLLISION,**

                                    **Defendant.**

---

**APPEARANCES:**                             **OF COUNSEL:**

**LEADER & BERKON LLP - NY OFFICE**     **DAVID J. GOODEARL, ESQ.**
630 Third Avenue, 17th Floor            **CAROLINE C. MARINO, ESQ.**
New York, New York 10017
Attorneys for Plaintiff

**COSTELLO, COONEY & FEARON, PLLC**   **ROBERT J. SMITH, ESQ.**
211 W. Jefferson Street                    **STACY A. MARRIS, ESQ.**
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      On March 23, 2022, Plaintiff BASF Corporation ("Plaintiff") commenced this diversity action alleging various state law claims against Defendant Ralph Stoutenger d/b/a Custom Collision ("Defendant"). *See* Dkt. No. 1. Plaintiff's amended complaint asserts three causes of action against Defendant for breach of contract, unjust enrichment, and declaratory relief. *See* Dkt. No. 19 at ¶¶ 32-49. Defendant's answer to the amended complaint asserts four counterclaims against Plaintiff: (1) anticipatory repudiation; (2) breach of contract; (3) unjust enrichment; and (4) fraud/fraudulent inducement. *See* Dkt. No. 20 at ¶¶ 78-115. Defendant also seeks declaratory

and injunctive relief, "enjoining and restraining Plaintiff from terminating" their alleged agreement. *Id.* at ¶¶ 85, 94.

On August 1, 2022, the Court held a preliminary conference with the parties. *See* Dkt. No. 23. The Court granted Plaintiff's request for leave to file a motion to dismiss Defendant's counterclaims. *Id.* Currently before the Court is Plaintiff's motion brought pursuant to Rules 12(b)(6), 8(a), and 9(b) of the Federal Rules of Civil Procedure. *See* Dkt. No. 26. Defendant opposes the motion and has requested, in the event the Court grants Plaintiff's motion, that he be permitted leave to amend his answer. *See* Dkt. No. 27.

For the reasons that follow, Plaintiff's motion is denied and Defendant's request for leave to amend is denied as moot.

## II. BACKGROUND[1]

According to Defendant, in or about October 2017, he "purchased an automotive repair shop from Mr. Joseph Bush, as a turnkey operation, and began doing business as Custom Collision." Dkt. No. 20 at ¶ 35. Defendant also purchased "a large amount of leftover materials" from Mr. Bush, "including a computer, a paint mixer and BASF refinish products, which included paints and toners." *Id.* at ¶ 36. Around the time of the purchase Defendant "worked exclusively on personal vehicles." *Id.* at ¶ 37.

On or about October 20, 2017, Defendant entered into an agreement with Central Auto Body Supply, a supplier and distributor of Plaintiff's products ("Central Auto Body Contract"). *See* Dkt. No. 20 at ¶¶ 38-41. Defendant personally negotiated the contractual terms with Mr. Michael Walker, Jr., at a restaurant in Clay, New York. *See id.* at ¶ 39. While no employees of

---

[1] For the purpose of deciding Plaintiff's motion to dismiss, the Court draws the factual allegations from Defendant's answer.

2

Plaintiff were present, "Mr. Walker was a supplier/distributor of Plaintiff with full rights to negotiate on Plaintiff's behalf." *Id.* at ¶ 40.

In pertinent part, the Central Auto Body Contract stated that Defendant would receive the following: 10% discount off "BASF suggested refinish price list"; 10% "Prompt Pay Discount"; "Prebate (upfront capital investment)" of $100,000.00; "BASF SmartTrak4 Support Fee" valued at $195.00 per quarter; "RM Diamont Toners & Pearls" valued at $22,770.00; "BASF SmartTrak4 w/ Equipment" valued at $13,650.00; and "BASF ID Kit" valued at $300.00. Dkt. No. 20 at ¶ 41; *see also* Dkt. No. 20-1 at 3. In exchange, "Defendant agreed to purchase $535,650.00 worth of Plaintiff's refinish products from Central Auto Body" and to utilize Plaintiff as an "exclusive paint manufacturer." *Id.* at ¶¶ 38-41; Dkt. No. 20-1 at 3.

On or about November 10, 2017, less than one month after signing the Central Auto Body Contract, "Plaintiff's corporate representative, Mr. John Chudy, came into Defendant's shop with another contract ['Requirements Agreement']." Dkt. No. 20 at ¶ 45. While at the shop, "Mr. Chudy represented to Defendant that the Requirements Agreement contained the exact same terms and conditions as the Central Auto Body Contract[.]" *Id.* at ¶ 47. As such, "Defendant signed the Requirements Agreement." *Id.*

Defendant believed that he had entered "into an agreement with BASF to purchase $535,650.00 worth of refinish products."[2] Dkt. No. 20 at ¶ 50. However, "the only term that remained the same was that there was no date by which Defendant had to complete its purchase of Plaintiff's refinished products[.]" *Id.* at ¶ 48. In an apparent "bait-and-switch," Plaintiff had increased the purchase requirement to $815,000.00, "knowing that it could take Defendant

---

[2] The Requirements Agreement defines "Refinish Products" as "after-market paints, refinishes, coatings, primers, thinners and reducers." Dkt. No. 20 at ¶ 52.

3

decades to purchase the requisite amount." *Id.* at ¶¶ 50-51.  In light of the $100,000 "up front" promise, Defendant asserts that "[s]uch behavior resembles a predatory loan scheme." *Id.* at ¶ 51.

At some point "following the signing of the Requirements Agreement, Plaintiff removed Defendant's computer and paint mixer from the shop and replaced it with Plaintiff's equipment, telling Defendant that it was an upgrade and that it would be easier for Defendant to use Plaintiff's equipment, even though Defendant's equipment was sufficient." Dkt. No. 20 at ¶ 53.  Plaintiff communicated to Defendant that the replacement was a "clean swap" and that "it would be a free swap to better equipment." *Id.* at ¶ 54.  Defendant's former equipment was "worth a considerable sum." *Id.* at ¶ 55.

In or around September 2018, "Defendant opened a separate building to service commercial vehicles." Dkt. No. 20 at ¶ 63.  At no point prior thereto had Defendant maintained a commercial vehicle business. *See id.* at ¶ 43.  As "Plaintiff did not offer a commercial-grade compatible product at a reasonable price[,]" Defendant began purchasing commercial refinish products from PPG Industries. *Id.* at ¶ 64.  Defendant never purchased refinish products from PPG Industries for personal vehicles. *See id.* at ¶ 65.  At Defendant's shop, he has had on display a "BASF" window sign for the personal vehicle operation and a "PPG" sign for the commercial vehicle operation. *Id.* at ¶ 66.

In 2019 "Defendant sought to change suppliers/distributors of Plaintiff's Refinish Products to Liquidz Autobody Supply Inc. ['Liquidz']." Dkt. No. 20 at ¶ 60.  This was due to Central Auto Body's "expensive" prices and "poor" quality, and the fact that "it was extremely difficult to contact Central Auto Body in order to do business." *Id.* at ¶ 59.  Central Auto Body had "also failed to provide certain items." *Id.*  At some point, Liquidz contacted Plaintiff "to ensure Defendant would be allowed to switch its supplier/distributor of Plaintiff's Refinish Products to

4

Liquidz and Plaintiff approved the change." *Id.* at ¶ 61. Defendant purchased Plaintiff's Refinish Products from Liquidz's sales representative, Mr. Michael Zahn. *Id.* at ¶ 62.

In 2020, Defendant's product purchases slowed due to the COVID-19 pandemic. *See* Dkt. No. 20 at ¶ 67. "Defendant's commercial vehicle operation was all that kept Defendant in business." *Id.* Although Defendant's personal vehicle operation slowed considerably and has "not reached pre-COVID-19 Pandemic levels," Defendant still "purchases Plaintiff's Refinish Products as needed and is still willing to purchase Plaintiff's Refinish Products in regard to its personal vehicle operation." *Id.*

Mr. Zahn continued servicing Defendant's account on a weekly basis; however, in 2021 he "fell ill" and ultimately retired. Dkt. No. 20 at ¶ 69. Since then, no other supplier or distributor of Plaintiff's Refinish Products has serviced Defendant's account. *Id.* "[I]t is an industry-accepted standard that it is the supplier's/distributor's obligation to service an autobody repair shop's account; it is not the obligation of a shop to seek out the supplier's/distributor's sales representative to make a purchase." *Id.* at ¶ 68.

In January 2022, Mr. Chudy returned to Defendant's shop and met with the manager, Mr. Mark Alnutt. *See* Dkt. No. 20 at ¶ 70. Mr. Chudy asked Mr. Alnutt why Defendant had not recently purchased any of Plaintiff's Refinish Products. *See id.* Mr. Alnutt responded that Defendant was overstocked at the time. *See id.* at ¶ 71. Also in response to Mr. Chudy, Mr. Alnutt communicated that Defendant had been purchasing PPG commercial refinish product. *See id.* at ¶ 73. "Mr. Alnutt asked if Plaintiff had a comparable, reasonably-priced product, and Mr. Chudy replied in the negative." *Id.*

In January 2022, shortly after Mr. Chudy's visit, Defendant received a letter from Plaintiff "attempting to terminate the Requirements Agreement[.]" Dkt. No. 20 at ¶ 74. Prior to the letter,

5

Defendant had not "realized there was an issue between the parties." *Id.* Similarly, at no point had Plaintiff attempted to resolve the issue. *See id.* at ¶ 76. Notably, Defendant had continued purchasing Plaintiff's refinish products, as agreed, even though he never received some of the items/equipment initially promised in the Central Auto Body Contract and the Requirements Agreement. *See id.* at ¶¶ 58-59, 98-99. As of 2022, Defendant maintains "approximately $25,000 worth of Plaintiff's Refinish Products on its shelves and Defendant still has and uses the equipment Plaintiff forced Defendant to use." *Id.* at ¶ 72.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

6

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed," *id.* at 570.

**B.     Breach of Contract**

In Michigan[3], "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014) (citing *Stevenson v. Brotherhoods Mut. Benefit*, 312 Mich. 81, 90-91 (1945)).  It is the court's duty to interpret a contract when it "is to be construed by its terms alone; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469 (2003) (citing *O'Connor v. March Automatic Irrigation Co.*, 242 Mich. 204, 210 (1928)) (internal

---

[3] The Requirements Agreement contains a "Governing Law" clause stating that "performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law."  Dkt. No. 19-1 at ¶ 7.

quotations omitted). "Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule." *Id.* at 470.

Defendant's answer to the amended complaint plausibly alleges a breach of contract claim under Michigan law. As an initial matter, the Court notes that, while Defendant has affixed the Central Auto Body Contract to his answer for reference, the underlying breach of contract counterclaim concerns the Requirements Agreement, which is affixed to Plaintiff's amended complaint. *See* Dkt. No. 20 at ¶¶ 92-102; Dkt. No. 19-1. As such, the answer adequately pleads that a valid and enforceable agreement existed.

Defendant alleges that Plaintiff ceased servicing his account sometime in 2021. *See* Dkt. No. 20 at ¶¶ 45-51, 68-69, 92-97, 100. Defendant claims that "it is industry standard that the supplier/distributor has the obligation to service the account, not the shop owner." *Id.* at ¶ 68. Furthermore, while not referenced explicitly in the answer's "Breach of Contract" subsection, Defendant also alleges that he never received several products and/or equipment that Plaintiff promised to provide, including, *inter alia*, a spectrophotometer, color camera, blending table, and toners. *See id.* at ¶¶ 98-99. Defendant asserts that he has suffered damages as a result of the controversy at-hand by deprivation of such contractual benefits. *See id.* at ¶ 93. Defendant requests that the Court declare that the Requirements Agreement remains in effect. *See id.* at ¶¶ 94-96.

As a matter of clarification, the Court notes that Defendant's breach of contract counterclaim is largely intertwined with his affirmative defenses. *See* Dkt. No. 20 at ¶¶ 24-32, 87-96. For instance, Defendant asserts that his commercial vehicle business is distinct from his personal vehicle business, which did not exist at the time he entered the Requirements Agreement, and therefore he cannot be in breach relative to his PPG purchases. *See id.* at ¶¶ 46, 65-67; Dkt.

8

No. 27-2 at 7-9. The parties spend considerable time arguing whether or not their agreement contemplates "100%" of Defendant's business operations, and/or whether the parol evidence rule applies. *See id.*; Dkt. No. 26-1 at 15-18; Dkt. No. 29 at 4-6. However, the Rule 12(b)(6) analysis at-bar tests whether Defendant has adequately pleaded his own cause of action for breach of contract. Whether Defendant was in breach, in the manner alleged in Plaintiff's amended complaint, is not the issue to be decided at this juncture. As such, without making any ruling as to whether Defendant's contentions can ultimately withstand summary judgment, the Court finds that Defendant has plausibly asserted that (1) an agreement existed; (2) Plaintiff breached the terms; and (3) Defendant suffered damages.

Defendant has also adequately pleaded his request for declaratory and/or injunctive relief relative to the parties' contractual dispute. Specifically, Defendant seeks an order declaring "that the Requirements Agreement is enforceable by Defendant against Plaintiff, such that the Requirements Agreement remains in place; there is no time limit upon which Defendant must purchase the requisite amount of Plaintiff's Refinish Products; and it is proper execution that it is for Defendant's personal vehicle operation only." Dkt. No. 20 at ¶ 96. In determining whether such relief is appropriate, the Court has discretion to consider whether it will (1) "serve a useful purpose in clarifying . . . the legal relations in issue"; or (2) "afford relief from the uncertainty . . . giving rise to the proceeding." *Admiral Insurance Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (internal quotations omitted).

Even assuming Plaintiff did not breach any contractual provision, Defendant has pleaded enough factual allegations to show that a lack of clarity and certainty exists as to the parties'

9

obligations under the Requirements Agreement.  At this early juncture, the Court finds that declaratory and/or injunctive relief is a plausible remedy relative to this dispute.[4]

Accordingly, Plaintiff's motion to dismiss Defendant's breach of contract counterclaim and his request for declaratory and/or injunctive relief is denied.

**C.    Unjust Enrichment**

Under Michigan law, "unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another."  *Wright v. Genesse County*, 504 Mich. 410, 417 (2019) (citing Restatement Restitution, 1st, § 1, comment *a*, p. 12).  "A claim of unjust enrichment can arise when a party 'has and retains money or benefits which in justice and equity belong to another.'" *Id.* at 418 (quoting *McCreary v. Shields*, 333 Mich. 290, 294 (1952)).  An unjust enrichment claim is "independent of tort and contract liability" and "therefore the remedy is not compensatory damages, but restitution"—that is, "restor[ing] a party who yielded excessive and unjust benefits to his or her rightful position." *Id.* (citing Restatement Restitution & Unjust Enrichment, 3d, § 1, comments d & e, pp. 7-10).

The Court finds that Defendant has stated a plausible counterclaim for unjust enrichment under Michigan law.  Defendant asserts that "both the Central Auto Body Contract and the Requirements Agreement set forth several products that Central Auto Body and/or Plaintiff would provide to Defendant."  Dkt. No. 20 at ¶ 98.  Defendant states that he has not received the following items:

---

[4] An additional point of clarity is warranted as Plaintiff argues that such relief is improper because Defendant has failed to show (1) irreparable harm; (2) inadequate remedies; (3) hardship; and (4) public interest.  *See* Dkt. No. 26-1 at 16-17; Dkt. No. 29 at 9-10.  These factors are applicable to motion requests seeking temporary restraining orders and/or other preliminary injunctive relief.  *See Moore v. Consolidated Edison Co. of New York Inc.*, 409 F.3d 506, 510-512 (2d Cir. 2005).  In this case, the Court views Defendant's pleading as seeking an ultimate, final order for relief, as authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*.

>Pursuant to the Central Auto Body Contract:
>>10% discount off of BASF suggested refinish price;
>>10% prompt pay discount;
>>BASF SmartTrak4, with equipment and support fee;
>>$22,700 RM Diamont Toners and Pearls;
>
>Pursuant to the Requirements Agreement:
>>QM220S Pl MX MCH KIT (ANDD1003);
>>SmartTrak IV License (one time fee);
>>(CABZ1008) 36" Blending Table with extension (Fillon);
>>Spectrophotometer.

Dkt. No. 20 at ¶ 99. Defendant claims also that "upon information and belief, Defendant has not received a color camera which was supposed to be provided." *Id.* at ¶ 100. Additionally, Defendant alleges that "Plaintiff forcibly replaced some of Defendant's equipment that was sufficient with its own equipment, which it is now demanding back." *Id.* at ¶ 101. Plaintiff argues it could not have benefitted from the alleged "non-receipt of certain contractual items" and "the free upgrade to improved equipment"; nor did an inequity result to Defendant. Dkt. No. 26-1 at 19. The Court rejects this argument. Defendant's factual allegations plausibly assert that Plaintiff has retained items and benefits that were of value to Defendant, which in justice and equity belong to him. *See* Dkt. No. 20 at ¶¶ 98-104.

Accordingly, Plaintiff's motion to dismiss Defendant's unjust enrichment counterclaim is denied.

**D.    Anticipatory Repudiation**

Pursuant to Michigan law, "[u]nder the doctrine of repudiation or anticipatory breach, if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Stoddard v. Manufacturers Nat. Bank of Grand Rapids*, 234 Mich. App. 140, 163 (1999) (citing *Paul v. Bogle*, 193 Mich. App. 479, 493-494 (1992)). In

determining as much, "it is the party's intention manifested by acts and words that is controlling, not any secret intention that may be held." *Id.*  "A party's act must be both voluntary and affirmative, and must make it actually or apparently impossible for him to perform." *Paul*, 193 Mich. App. at 494 (citing Restatement (Second) of Contracts § 250 (1981)) (internal quotations omitted).

The Court finds that Defendant has stated enough facts to allege a plausible counterclaim for anticipatory repudiation under Michigan law.  Defendant alleges that Plaintiff terminated the Requirements Agreement via the January 2022 demand letter.  *See* Dkt. No. 20 at ¶¶ 79-86.  The January 2022 letter, which is affixed to Plaintiff's amended complaint, outlined Plaintiff's contentions as to how Defendant breached the Requirements Agreement and demanded relief. Dkt. No. 19-2.  However, Defendant alleges that he "has continued to purchase Plaintiff's Refinish Products as needed and is still willing to purchase Plaintiff's Refinish Products in regard to its personal vehicle operation."  Dkt. No. 20 at ¶¶ 67, 74-77.

Plaintiff argues that the demand letter "merely states that [Defendant] is in breach and advises him that [Plaintiff] will pursue legal remedies."  Dkt. No. 26-1 at 16.  Plaintiff contends that "[t]his is not a declaration by [Plaintiff] of an intent not to perform under the Requirements Agreement, but instead constitutes notice that [Defendant] is in breach of the agreement." *Id.*  In viewing the matter in a light most favorable to Defendant, the Court finds that the demand letter goes beyond merely providing notice of breach.  The letter contains a 10-day ultimatum to repay approximately $100,000 or else face litigation and additional damages.  *See* Dkt. No. 19-2.  While the letter also communicates an apparent openness to "resolv[e] this matter amicably," a fair interpretation also suggests that Plaintiff is proceeding as if the contractual relationship has been terminated.  *Id.*  Defendant disputes that he was in breach and, as discussed *supra*, seeks a final

order declaring that the Requirements Agreement remains in effect. At this early stage, Defendant has satisfied his pleading obligation.

Accordingly, Plaintiff's motion to dismiss Defendant's anticipatory repudiation counterclaim is denied.

**E.     Fraud/Fraudulent Inducement**

The Court notes that, while Michigan law governs all matters concerning the parties' contractual dispute, New York law governs Defendant's fraud claims because the alleged tort occurred in New York and the party alleging as much (*i.e.*, Defendant) is domiciled in New York. *See Holborn Corp. v. Sawgrass Mutual Insurance Co.*, 304 F. Supp. 3d 392, 398-399 (S.D.N.Y. 2018) (collecting cases). "To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted). Additionally, allegations of fraud must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, because the court "must not mistake the

13

relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Groupd, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (citations omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

     Herein, Defendant has plausibly alleged a fraud/fraudulent inducement counterclaim under New York law. More specifically, Defendant alleges that in October 2017 he personally negotiated contract terms at a restaurant with a distributor/supplier of Plaintiff's refinish products. *See* Dkt. No. 20 at ¶¶ 38-42, 106-15. Defendant alleges that he believed the individual was acting on Plaintiff's behalf. *See id.* at ¶ 40. Defendant alleges that weeks later, on November 10, 2017, Plaintiff's corporate representative came to his shop with another contract for Defendant to sign, and represented that the terms therein were the same as those previously negotiated with the distributor/supplier.[5] *See id.* at ¶¶ 45-51. According to Defendant, Plaintiff's alleged actions amount to a "bait-and-switch," whereby terms are first negotiated and memorialized in a binding

---

[5] In Paragraph 47 of the answer, Defendant prefaces this material allegation regarding Plaintiff's purported fraudulent representation with "upon information and belief," which Plaintiff argues cannot satisfy Rule 9(b)'s heightened pleading standard. Dkt. No. 20 at ¶ 47; *see* Dkt. No. 26-1 at 20. Notably, however, in other paragraphs, Defendant pleads essentially the same allegations without such language. *See* Dkt. No. 20 at ¶¶ 48-51, 106-09. Notwithstanding, in light of the detailed allegations as a whole, which include the time, place, speaker, and content of the alleged misrepresentations, the Court will apply Rule 9(b)'s recognized exception for "upon information and belief" allegations insofar as it pertains to information that lies peculiarly within the opposing parties' knowledge—that is, whether Plaintiff acted with the "intent" to defraud Defendant. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 882 F.2d 1242, 1247-1248 (2d Cir. 1987).

initial agreement with an individual supplier/distributor, only to be substantially altered in a later agreement directly with Plaintiff, without any discussion or input as to the changed terms. *See* Dkt. No. 20 at ¶¶ 105-15. Most critically, Defendant alleges that Plaintiff allegedly changed the terms to increase the requirement amounts by approximately $300,000.00—an amount that will purportedly take "decades" to fulfill. *Id.*

It should be noted that the Court is circumspect in accepting Defendant's allegations because they imply that, despite personally executing the Requirements Agreement, Defendant apparently did not read or did not understand the terms of a six-figure requirement terms, which will purportedly take "decades" to fulfill. However, Defendant avers that he believed the terms were the same as what he had negotiated weeks before, and that Plaintiff's corporate representative represented as much as a part of a larger predatory scheme. The Court must accept such allegations as true at this early stage.

In sum, Defendant alleges, in satisfaction of Rule 9(b)'s heightened pleading requirement, that: (1) Plaintiff's corporate representative falsely represented that the Requirements Agreement reflected the same terms as the Central Auto Body Contract; (2) Plaintiff intended to defraud Defendant by means of "bait-and-switch" and in furtherance of a putative "predatory loan scheme"; (3) Defendant reasonably relied upon Plaintiff's representations that the terms were the same; and (4) Defendant has suffered damages as a result.

Accordingly, Plaintiff's motion to dismiss Defendant's fraud/fraudulent inducement counterclaim is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to dismiss Defendant's counterclaims (Dkt. No. 26) is **DENIED**; and the Court further

**ORDERS** that Defendant's cross-motion to amend (Dkt. No. 27) is **DENIED** as moot; and the Court further

**ORDERS** that Defendant's answer to the amended complaint (Dkt. No. 20) remains as the operative responsive pleading in this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the partes in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 24, 2023
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge